UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
UNITED STATES OF AMERICA,

   -against-

KIOND JONES,

          Defendant.
--------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 09-CR-395-FB-1

*Appearances:*
*For the United States of America:*
ELLEN H. SISE
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

*For the Defendant:*
KIOND JONES, *pro se*
77399-053
FCI Fort Dix
Federal Correctional Institution
Post Office Box 2000
Joint Base MDL, New Jersey 08640

**BLOCK, Senior District Judge:**

    Kiond Jones is currently serving a sentence of 30 years' imprisonment. He moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)—part of the groundbreaking First Step Act—to reduce his sentence to time served (approximately 20 years). For the following reasons, the motion is denied.

**I**

    Jones was a lieutenant in the "Raleigh Place Crew," a Brooklyn-based gang involved in marijuana distribution and the use of violent means to further its operations. In 2010 he was convicted of racketeering, racketeering conspiracy,

marijuana-distribution conspiracy, and two violations of 18 U.S.C. § 924(c): use of a firearm in connection with a crime of violence (namely, racketeering) and use of a firearm in connection with a drug-trafficking crime (namely, marijuana-distribution conspiracy).  The racketeering convictions were based on three predicate acts: (1) marijuana distribution, (2) the kidnapping of Craig Hecclewood, and (3) the attempted murder of Moses Osbourne.  The Court sentenced Jones to concurrent terms of 15 years on the racketeering and marijuana-distribution convictions, a consecutive term of 10 years on the first § 924(c) conviction, and a consecutive term of 25 years on the second § 924(c) conviction, for a total term of 50 years' imprisonment.

The Second Circuit affirmed the racketeering and marijuana-distribution convictions but held that the two § 924(c) convictions were "multiplicitous."  *See United States v. Whyte*, 630 F. App'x 104 (2d Cir. 2015).  It reversed the second conviction, noting that the first carried a higher mandatory minimum sentence because Jones had discharged the firearm at issue in that count.  *See id.* at 110. Although that fact had been found by the Court, not the jury—in contravention of the Supreme Court's intervening decision in *Alleyne v. United States*, 570 U.S. 99 (2013)—the circuit court held that the error was harmless because the jury had found the attempted murder of Osbourne proved in connection with the racketeering conviction, "and no evidence was presented at trial to suggest that

2

Jones could have attempted to kill Osbourne in any other way than through the discharge of his weapon." *Whyte,* 630 F. App'x at 108. The case was remanded for resentencing. *See id.* at 110.

On remand, the Court imposed concurrent 20-year sentences on the racketeering and marijuana-distribution convictions and a consecutive 10-year sentence on the remaining § 924(c) conviction, for a total of 30 years' imprisonment. Although the concurrent sentences were higher than the 15-year sentences originally imposed, the Court explained that its *total* sentence was lighter than the 35-year sentence it would have imposed had the first § 924(c) conviction not been part of the original sentencing dynamic; the five-year reduction of that hypothetical sentence was based in large part on Jones's "extraordinary rehabilitation" during his incarceration. Tr. of Sept. 21, 2016, at 32. The Second Circuit affirmed, finding "no error" in the Court's balancing of Jones's commendable behavior in prison against the reprehensible conduct that led to his convictions:

> [T]he district court explained that it was reconfiguring the sentence *in toto* to account for the original 35 years that it would have imposed at sentencing in the absence of the vacated [firearm] count. It also considered Jones's recent rehabilitation in ordering an overall sentence reduction. The court recited the reasoning behind the original fifty-year sentence, including vicious and violent conduct that spanned the shooting of one victim and pistol-whipping of another, and it outlined in detail how the new sentencing package fit together.

3

*United States v. Praddy*, 729 F. App'x 21, 24 (2d Cir. 2018).

## II

Under the First Step Act, a district court can now, on a defendant's motion, reduce a previously imposed sentence if "after considering the factors set forth in § 3553(a) to the extent that they are applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A)(i).   In *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), the Second Circuit held that the only relevant policy statement, embodied in Guideline § 1B1.13, was not "applicable" because it dealt only with sentence reductions requested by the Bureau of Prisons ("BOP").   *See id.* at 236.   Noting that "a district court's discretion in this area—as in all sentencing matters—is broad," *id.* at 237, the circuit court concluded that the lack of an applicable policy statement "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."   *Id.*   "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'"   *Id.* at 237-38 (quoting, with emphasis, 28 U.S.C. § 994(t)); *see also Concepcion v. United States*, 597 U.S. 481, 494 (2022) ("The only limitations on a

4

court's discretion to consider any relevant materials . . . in modifying [a] sentence are those set forth by Congress in a statute or by the Constitution.")

In *United States v. Russo*, 643 F. Supp. 3d 325 (E.D.N.Y. 2022), the Court observed that "the 'broad' sentencing discretion which *Brooker* and *Concepcion* conferred on district courts in modifying a sentence under the First Step Act is at tension with the 'extraordinary and compelling' statutory constraint." *Id.* at 331 n.5. It predicted that formulating an applicable policy statement would require the Sentencing Commission to "grapple with these conceptual dichotomies." *Id.*

The result of the commission's task emerged less than five months after *Russo* was decided. Amendment 814, promulgated in April 2023, finally updated the commission's views on the effect of the First Step Act. The amendment carries forward, with modifications, the three extraordinary and compelling reasons listed in the previous policy statement: serious medical conditions, advanced age, and family circumstances. *See* Guideline § 1B1.13(b)(1-3). It adds sexual and physical abuse by BOP employees or contractors as a fourth reason. *See id.* § 1B1.13(b)(4). It includes a catchall for "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5). Finally, it provides that, under certain circumstances (described in more detail below),

5

changes in the law "may be considered in determining whether the defendant presents an extraordinary and compelling reason." *Id.* § 1B1.13(b)(6).

Amendment 814 took effect on November 1, 2023. The Court has since alluded to the new version of Guideline § 1B.1.13, *see United States v. Johnson*, 754 F. Supp. 3d 305, 311 (E.D.N.Y. 2024); *United States v. Tavarez*, 747 F. Supp. 3d 557, 560 (E.D.N.Y. 2024), but has not yet had occasion to address in any depth its impact on district courts' "broad" discretion to consider the "full slate" of potentially extraordinary and compelling reasons for reducing a sentence under *Brooker*.

As a general matter, the Guidelines have been merely advisory since *United States v. Booker*, 543 U.S. 220 (2005), which "requires a sentencing court to consider Guidelines ranges [but] permits the court to tailor the sentence in light of [the factors listed in 18 U.S.C. § 3553(a).]" *Id.* at 245 (remedial opinion). *Booker* was decided against a historical backdrop of judicial discretion to select an appropriate sentence within the minima and maxima set by Congress. *See id.* at 233 ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."). Restricting that discretion based on judge-found facts "violated the defendant's [Sixth Amendment] right to have the jury find the existence of any particular fact that the law makes essential to his punishment." *Id.* at 232 (internal quotation marks omitted). By making

6

the Guidelines advisory, the Supreme Court took the Sixth Amendment out of the picture, "[f]or when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Id.* at 233.

Thus, *Booker* restored a district court's historically broad discretion to determine an appropriate sentence as an initial matter. *See Concepcion*, 597 U.S. at 491 ("There is a long and durable tradition that sentencing judges enjoy discretion in the sort of information they may consider at an initial sentencing proceeding." (internal quotation marks and alteration omitted)). The ability to *modify* a sentence, by contrast, was tightly circumscribed to corrections of ministerial errors, reductions for substantial assistance, and, of course, reductions for extraordinary and compelling reasons determined exclusively by BOP. *See* 18 U.S.C. § 3582(c) (2017). The First Step Act drastically amplified that ability simply by "shift[ing] discretion from [BOP] to the courts." *Brooker*, 976 F.3d at 230. "Congress clearly did not view this—a break with over 30 years of procedure—as a minor or inconsequential change." *Id.* at 235. Nevertheless, it mandated that the exercise of courts' newly-minted discretion be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

Since the prior version of Guideline § 1B1.13 did not apply to motions

7

brought by defendants, it could not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling."  *Brooker*, 976 F.3d at 236.  The Second Circuit did not have to decide what effect an "applicable" policy statement would have on that discretion but hinted at an answer.  It phrased the issue before it as "whether courts *remain bound* by . . . § 1B1.13," *id.* at 230 (emphasis added), which suggests that they were bound when dealing with a motion brought by BOP.

Unlike the restriction on initial sentencing discretion at issue in *Booker*, Congress's decision to impose conditions on its grant of increased discretion to modify a sentence raises no Sixth Amendment or other constitutional issues.  Accordingly, the Court makes explicit what *Brooker* implies:  Now that Guideline § 1B1.13 plainly applies to a defendant's motion to reduce his or her sentence, a district court is statutorily bound by it in deciding the motion.

With that in mind, the Court turns to the specific provisions invoked by Jones: subsection (5) and subsection (6).

**A.      Subsection (5)**

Although § 1B1.13 theoretically limits district courts' discretion to decide what constitutes extraordinary and compelling reasons for reducing a sentence, its catchall provision leaves that discretion largely unchecked as a practical matter. District courts may still consider "any other circumstance or combination of

8

circumstances," as long as they are "similar in gravity to those described in paragraphs (1) through (4)."  Guideline § 1B1.13(b)(5).

Jones cites his age (21) at the time of his offenses; the sentence of time served given to Raymond Dowdie, Jones's boss in the Raleigh Place Crew, who pleaded guilty to similar—though not identical—conduct; and his continued efforts at rehabilitation.  The Court agrees that each of those factors can combine to produce an extraordinary and compelling reason in an appropriate case.  *See Tavarez*, 747 F. Supp. 3d at 311-314 (considering youth and rehabilitation in combination with other factors); *Russo*, 643 F. Supp. 3d at 332-335 (considering rehabilitation and co-defendants' light sentences in combination with other factors).  They might have well constituted extraordinary and compelling reasons here if they were being presented for the first time—for example, if Dowdie had been sentenced after Jones.

But the Court already considered Jones's culpability relative to Dowdie, as well as his youth, in formulating its sentence.  By the fortuity of the Second Circuit's remand, it was also able to consider his post-sentence rehabilitation up to that time; although Jones notes additional evidence of rehabilitation since his resentencing, the Court implicitly assumed that Jones's positive trajectory in regard to rehabilitation would continue throughout the remainder of his sentence.

Although "an extraordinary and compelling reason need not have been

9

unforeseen at the time of sentencing," Guideline § 1B1.13(e), the whole premise of the First Step Act was to allow a district court to consider *changes* in a defendant's circumstances in deciding whether to reduce the sentence it previously imposed. It was not intended to give defendants a second chance to argue for a lower sentence based on factors already considered at the time of that sentence.

**B.      Subsection (6)**

Subsection (6), which deals with subsequent changes to the law in effect at the time of sentencing, appears at the end of § 1B1.13's list of extraordinary reasons, *after* the catchall provision.   Its curious placement may reflect the Sentencing Commission's acknowledgment that the issue of whether and under what circumstances such changes could be considered had proven to be a thorny issue worthy of being singled out.   See *United States v. Chen*, 48 F.4th 1092, 1096-98 (9th Cir. 2022) (holding that district courts could consider the First Step Act's nonretroactive abolition of "stacking" § 924 convictions and noting a circuit split on the issue).   In any event, the commission ultimately embraced the view that district courts could consider changes in the law, but did so with reservations:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is

10

filed, and after full consideration of the defendant's individualized circumstances.

Guideline § 1B1.13(b)(6).  Other changes "shall not be considered for purposes of determining whether an extraordinary and compelling reason exists," but if other such reasons justify a sentence reduction, they "may be considered for purposes of determining the extent of any such reduction." *Id.* § 1B1.13(c).

The balance the commission struck has perpetuated the circuit split noted in *Chen*.  The courts that had forbidden consideration of nonretroactive changes in the law when there was no applicable policy statement have now invalidated the Sentencing Commission's contrary view. Most recently, the Sixth Circuit held that subsection (6) "is plainly unreasonable under [the First Step Act] and in conflict with the separation of powers."  *United States v. Bricker*, 135 F.4th 427, 430 (6th Cir. 2025); *see also United States v. Black*, 131 F.4th 542, 543 (7th Cir. 2025); *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Rutherford*, 120 F.4th 360, 376 (3d Cir. 2024).  A pending cert petition in *Rutherford*, *see* Case No. 24-820 (U.S. Feb. 3, 2025), will presumably afford the Supreme Court the opportunity to decide whether those decisions can be squared with its holding in *Concepcion* that "the First Step Act requires

11

district courts to consider intervening changes [in the law] when parties raise them." 597 U.S. at 487.

Like the Supreme Court, the Second Circuit has not yet weighed in on subsection (6). *See United States v. Johnson*, ___ F. App'x ___, 2025 WL 100622, at *2 (2d Cir. Jan. 15, 2025) (noting that subsection (6) was irrelevant "given the district court's reliance on an independent basis for denying Johnson's motion"). But far more than spelling differentiates *Bricker* from *Brooker*. While district courts in the Sixth Circuit and elsewhere could not consider nonretroactive changes in the law under any circumstances, district courts in this circuit were free to exercise their discretion. *See, e.g.*, *United States v. Sessoms*, 565 F. Supp. 3d 325, 329 (E.D.N.Y. 2021). Thus, in the Second Circuit at least, subsection (6) represents nothing more than a fulfillment of the Sentencing Commission's congressional mandate to provide a policy statement to guide that discretion. *Accord United States v. Chavez*, 757 F. Supp. 3d 585, 590 (S.D.N.Y. 2024) ("In the absence of any controlling Second Circuit precedent . . . , this Court concludes that the Sentencing Commission had ample congressional authority to promulgate subsection (b)(6).").

As set forth above, subsection (6) requires Jones to show (1) that he has served at least 10 years of an "unusually long sentence," and (2) that a change in

12

the law would produce a "gross disparity" between that sentence and "the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." Guideline § 1B1.13(b)(6). It is undisputed that Jones has served at least 10 years of his 30-year sentence. It is debatable whether that sentence is unusually long, in part because subsection (6) raises the question: "Unusually long compared to what?" The Court need not answer that question, however, because there has not been any change in the law that would make Jones's sentence grossly disparate to the sentence he would likely receive today.

In that regard, Jones relies on *Dean v. United States*, 581 U.S. 62 (2017), in which the Supreme Court held that "[n]othing in § 924(c) restricts the authority conferred on sentencing courts . . . to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." *Id.* at 69. At least one district court in this circuit has held that changes in caselaw—and *Dean* in particular—can be considered under subsection (6). *See Chavez*, 757 F. Supp. 3d at 593.

*Dean* undoubtedly changed the law by abrogating the rule in effect when Jones was resentenced that "a sentencing judge was not permitted to consider the severity of mandatory consecutive minimum sentences under section 924(c) in determining sentences on underlying predicate offenses." *United States v. Brown*,

13

935 F.3d 43, 46 (2d Cir. 2019) (citing *United States v. Chavez*, 549 F.3d 119, 135 (2d Cir. 2008)).   But that change did not, of its own force, reduce any defendant's sentencing exposure; rather, it merely gave district courts "the discretion, but not the obligation," to consider the severity of a mandatory consecutive sentence for a § 924(c) conviction in choosing an appropriate sentence for the predicate offense. *Id.*

That increased discretion was important in *Chavez* because the sentencing judge had "repeatedly raised concerns of the length of Chavez's aggregate sentence after noting that he could not consider the consecutive mandatory minimum on [the § 924(c) count] in calculating a sentence on [the predicate narcotics count]."   757 F. Supp. 3d at 592.   It was therefore "clear from the transcript that [the sentencing judge] would have imposed a lower sentence on the predicate narcotics charge, very likely the mandatory minimum, if he thought he could consider the consecutive mandatory minimum on [the § 924(c) count]."   *Id.*

The Court expressed no analogous concerns in this case.   On the contrary, it *increased* the sentence on the predicate count to arrive at the aggregate 35-year sentence it would have imposed before reducing it to 30 years to account for Jones's post-sentencing rehabilitation.   It can say with absolute certainty that it would not have further reduced the sentence to balance out what it believed to be an excessively harsh sentence on the § 924(c) conviction.   Thus, unlike *Chavez*,

14

there is no likelihood that Jones would have received a lighter sentence had *Dean* been on the books when he was resentenced.

Jones also cites *Alleyne*, which held that "any fact that increases the mandatory minimum is an element [of the crime] that must be submitted to the jury." 570 U.S. at 103. But *Alleyne* was decided in 2013, three years before Jones was resentenced. Indeed, the Second Circuit applied *Alleyne* to Jones's appeal of his convictions and original sentence. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final[.]"). It nevertheless held the lack of a jury finding that Jones had discharged a firearm in connection with his first § 924(c) conviction was harmless. *See Whyte*, 630 F. App'x at 108. That holding was and is the law of the case. Thus, *Alleyne* did not change the law in effect when Jones was resentenced and would not, in any event, reduce the mandatory minimum for his § 924(c) conviction if he were sentenced today.

## III

For the foregoing reasons, the Court concludes that Jones has not presented any extraordinary or compelling circumstances justifying a reduction of his sentence. Even if he had, the Court would still have to consider the § 3553(a) factors "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i).

15

The Court gave full consideration to those factors when it resentenced Jones in 2016. Nothing in the intervening nine years changes its conclusion that 30 years' imprisonment is adequate but no greater than necessary to reflect the violent nature of Jones's crimes in light of his youth, relative culpability, and rehabilitation while in prison. Accordingly, his motion for a reduction in his sentence is denied.

    **SO ORDERED.**

                                           _/S/ Frederic Block_____
                                           FREDERIC BLOCK
                                           Senior United States District Judge

Brooklyn, New York
June 9, 2025